TODD KIM
Assistant Attorney General
CODY MCBRIDE
Trial Attorney, CA Bar No. 298099
cody.mcbride@usdoj.gov
REBECCA M. ROSS
Senior Attorney, AZ Bar No. 028041
rebecca.ross@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Indian Resources Section
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
TEL:  (202) 353-6755 (McBride)
TEL:  (202) 616-3148 (Ross)
FAX: (202) 353-1156

*Attorneys for Plaintiff United States of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CRAIG FERGUSON,<br><br>Defendant. | Case No. 5:23-cv-2286-MWF-SP<br><br>**UNITED STATES' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT, DECLARATORY RELIEF, EJECTMENT, AND DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Fed. R. Civ. P. 55]<br><br>Date:      June 3, 2024<br>Time:      10:00 AM<br>    Courtroom 5A<br>Judge:   Hon. Michael W. Fitzgerald |

i

**TO THE HONORABLE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE** that on June 3, 2024, at 10:00 AM, or as soon thereafter as this matter may be heard in the above-entitled Court, the United States of America ("United States"), as trustee for the Colorado River Indian Tribes ("CRIT"), shall move the Court for default judgment pursuant to Fed. R. Civ. P. 55(b). Specifically, the United States moves for default judgment: (1) declaring that Defendant is committing a continuing trespass on property the United States owns and holds in trust for the benefit of CRIT, situated within the boundaries of the Colorado River Indian Reservation; (2) ejecting Defendant and his personal property from that trust property; (3) ordering Defendant to pay $54,559 in principal trespass damages, $5,834 in prejudgment interest, and postjudgment interest compounded annually; and (4) allowing the United States to seek restoration damages, if necessary, after CRIT takes possession of the property.

The United States' Motion is based on this Notice of Motion and Motion for Default Judgment, the attached Memorandum of Points and Authorities (with supporting exhibits), and any further material and argument presented to the Court in subsequent briefing or at the time of the hearing. A proposed order is filed concurrently herewith.

DATED: April 24, 2024

Respectfully submitted,

TODD KIM
Assistant Attorney General

*/s/ Cody McBride*
CODY MCBRIDE
REBECCA M. ROSS
United States Department of Justice
Environment & Natural Resources Division
Indian Resources Section

OF COUNSEL:
Karen F. Boyd
United States Department of the Interior
Office of the Solicitor
Indian Trust Litigation Office

iii

## **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................2

III. PROCEDURAL BACKGROUND ......................................................................3

IV. ARGUMENT ......................................................................................................4

    A.  Defendant was Properly Served, and the Court Possesses the Requisite
        Jurisdiction to Grant the Motion ..................................................................5

    B.  The United States is Entitled to Default Judgment in this Case .............6

        1. Plaintiff will be prejudiced if default judgment is not entered ........7

        2. Plaintiff's claims have merit, and the Complaint is sufficient .........7

        3. Damages sought are reasonable in relation to Defendant's
           conduct ........................................................................................9

           a. Principal trespass damages ...............................................10

           b. Prejudgment interest ........................................................11

           c. Postjudgment interest .......................................................12

           d. Restoration damages ........................................................13

        4. The likelihood of a dispute of material fact is minimal ...............15

        5. Defendant's default was not due to excusable neglect .................15

        6. Policy favoring a decision on the merits is not dispositive ..........16

    C.  The United States' Requested Remedies Are Proper ...........................16

        1. Declaration of trespass and ejectment ..........................................17

        2. Damages ........................................................................................18

V. CONCLUSION..................................................................................................19

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Air Separation, Inc. v. Underwriters at Lloyd's of London*,

4

45 F.3d 288 (9th Cir. 1995) .............................................................. 12, 13

5

*Amini Innovation Corp. v. KTY Int'l Mktg.*,

6

768 F. Supp. 2d 1049 (C.D. Cal. 2011) ................................................ 17

7

*Anunciation v. W. Cap. Fin. Servs. Corp.*,

8

97 F.3d 1458 (9th Cir. 1996) .......................................................... 16, 19

9

*Ashcroft v. Iqbal*,

10

556 U.S. 662 (2009) ............................................................................... 7

11

*Bd. of Trs. v. Core Concrete Const., Inc.*, No. 11-CV-2532,

12

2012 WL 380304 (N.D. Cal. Jan. 17, 2012) .......................................... 9

13

*Blankenship v. Liberty Life Assur. Co. of Bos.*,

14

486 F.3d 620 (9th Cir. 2007) ............................................................... 12

15

*Constr. Laborers Trust Funds for S. Cal. Admin. Co. v. United Constr. &*

16

*Maint. Inc.*, No. 2:14-CV-03483, 2015 WL 13915733

17

(C.D. Cal. Apr. 1, 2015) ...................................................................... 15

18

*Craigslist, Inc. v. Naturemarket, Inc.*,

19

694 F. Supp. 2d 1039 (N.D. Cal. 2010) ................................................ 16

20

*Craneveyor Corp. v. AMK Express Inc.*, No. 16-CV-6049,

21

2017 WL 89553 (C.D. Cal. Jan. 10, 2017) ............................................ 5

22

*Danning v. Lavine*,

23

572 F.2d 1386 (9th Cir. 1978) ............................................................... 7

24

*DirecTV, Inc. v. How Huynh*, 503 F.3d 847 (9th Cir. 2007) ..................... 15

25

*Eitel v. McCool*,

26

782 F.2d 1470 (9th Cir. 1986) ............................................................... 7

27

28

*Elektra Ent. Grp., Inc. v. Crawford,*
    226 F.R.D. 388 (C.D. Cal. 2005) .................................................................. 7

*Flynn v. Angelucci Bros & Sons, Inc.*, 448 F. Supp. 2d 193 (D.D.C. 2006) .......... 14

*GS Holistic, LLC v. Ravens Smoke Shop, Inc.*, No. 22-CV-7199,
    2023 WL 9319242 (C.D. Cal. Dec. 1, 2023) ............................................... 5, 7

*Hammond v. Cty. of Madera,*
    859 F.2d 797 (9th Cir. 1988) ..................................................................... 10

*Henry v. Sneiders,*
    490 F.2d 315 (9th Cir. 1974) ..................................................................... 16

*In re Nucorp Energy, Inc.,*
    902 F.2d 729 (9th Cir. 1990) ..................................................................... 12

*In re Tuli,*
    172 F.3d 707 (9th Cir. 1999) ....................................................................... 5

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.,*
    725 F. Supp. 2d 916 (C.D. Cal. 2010) ...................................................... 16

*Letvinuk v. Aetna Life Ins. Co.*, No. 06-CV-2831,
    2011 WL 6056878 (C.D. Cal. Dec. 2, 2011) ............................................. 11

*Marsh v. Brooks,*
    49 U.S. 223 (1850) ...................................................................................... 8

*Mason v. Genisco Tech. Corp.,*
    960 F.2d 849 (9th Cir. 1992) ....................................................................... 5

*Mesa Underwriters Specialty Ins. v. Paradise Skate*, No. 15-CV-01253,
    2016 WL 9045622 (N.D. Cal. Apr. 11, 2016) ........................................... 17

*Monsanto Co. v. Hodel,*
    827 F.2d 483 (9th Cir. 1987) ..................................................................... 11

*NewGen LLC v. Safe Cig, LLC,*
    840 F.3d 606 (9th Cir. 2016) ..................................................................... 15

*Northrop Corp. v. Triad Intern. Marketing*,
 842 F.2d 1154 (9th Cir. 1988) ......................................................... 12

*PepsiCo, Inc. v. Cal. Sec. Cans*,
 238 F. Supp. 2d 1172 (C.D. Cal. 2002) ..................................... 4, 7, 9

*Shapkin/Crossroads Prods., Inc. v. Legacy Home Video, Inc.*,
 122 F.3d 1073, 1997 WL 556312 (9th Cir. 1997) ........................... 17

*TechStock USA, LLC v. RA's Merchandise, LLC*,
 No. 17-0853, 2017 WL 7156294 (C.D. Cal. Nov. 13, 2017) ........... 17

*TeleVideo Sys., Inc. v. Heidenthal*,
 826 F.2d 915 (9th Cir. 1987) ......................................................... 17

*Termine v. Wm. S. Hart Union High School District*,
 288 Fed. Appx. 360 (9th Cir. 2008) ............................................... 12

*U.A. Local 393 Pension Fund v. Blue Star Plumbing, Inc.*, No. 21-CV-04265,
 2022 WL 2288931 (N.D. Cal. Jan. 14, 2022) ................................. 15

*United Specialty Ins. Co. v. E-Cig Vapor Emporium, LLC*,
 No. 18-CV-0002, 2018 WL 6629246 (C.D. Cal. Dec. 6, 2018) ....................... 17

*United States v. Brunskill*,
 792 F.2d 938 (9th Cir. 1986) ......................................................... 13

*United States v. California*,
 332 U.S. 19 (1947) ......................................................................... 18

*United States v. Imperial Irr. Dist.*,
 799 F. Supp. 1052 (S.D. Cal. 1992) ........................................ 8, 10, 18

*United States v. McClure*, No. 04-CV-3047,
 2006 WL 2818354 (E.D. Wash. Sept. 26, 2006) ............................ 13

*United States v. Milner*,
 583 F.3d 1174 (9th Cir. 2009) .................................................... 6, 8

*United States v. Osterlund*,

vii

671 F.2d 1267 (10th Cir. 1982) ..................................................8, 18

*United States v. Pend Oreille Pub. Util. Dist. No. 1,*

28 F.3d 1544 (9th Cir. 1994) ...............................................8, 11, 12

*United States v. Thweatt,*

No. 5:20-CV-1122 (C.D. Cal. Nov. 18, 2021) ..............................18

*United States v. Torlaw Realty, Inc.,*

483 F. Supp. 2d 967 (C.D. Cal. 2007) ...............................................13

*Waters v. Mitchell,*

600 F. Supp. 3d 1177 (W.D. Wash. 2022) ...........................................7

*Wecosign, Inc., v. IFG Holdings, Inc.,*

845 F. Supp. 2d 1072 (C.D. Cal. 2012) ...................................15, 16

*Wood v. Ostrander,*

851 F.2d 1212 (9th Cir. 1988) ...............................................10

**Statutes**

28 U.S.C. § 1331 ..........................................................................6

28 U.S.C. § 1345 ..........................................................................6

28 U.S.C. § 1961(a) ....................................................................12

28 U.S.C. § 1961(b) ...............................................................12, 13

28 U.S.C. § 2415(b) ....................................................................10

Act of March 3, 1865, 13 Stat. 541 ...............................................2

78 Stat. 188 (Apr. 30, 1964) .........................................................2

**Regulations**

25 C.F.R. § 162.003 ................................................................8, 10

25 C.F.R. § 162.005 ......................................................................8

25 C.F.R. § 162.371 ......................................................................8

**Rules**

Fed. R. Civ. P. 4 ......................................................................3, 15

Fed. R. Civ. P. 5 ................................................................................. 4, 15

Fed. R. Civ. P. 54(c) .............................................................................. 19

Fed. R. Civ. P. 55(a) ........................................................................ 1, 4, 6

Fed. R. Civ. P. 55(b) .................................................................... 1, 4, 6, 17

L.R. 5-3.2.1 ............................................................................................ 4

L.R. 55-1 ................................................................................................ 4

**Other Authorities**

25 Am. Jur. 2d *Ejectment* § 1 (2024) ..................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On November 6, 2023, the United States of America ("United States"), as trustee for the Colorado River Indian Tribes ("CRIT"), filed the Complaint against Defendant Craig Ferguson, alleging that Defendant has trespassed and continues to trespass on land the United States owns and holds in trust for CRIT, situated within the boundaries of the Colorado River Indian Reservation ("Reservation").[1] ECF No. 1. Because Defendant failed to answer or otherwise respond to the Complaint, the United States requested that the Clerk of the Court enter default against Defendant pursuant to Fed. R. Civ. P. 55(a). ECF No. 13. On January 25, 2024, the Clerk entered default against Defendant. ECF No. 14.

Now, pursuant to Fed. R. Civ. P. 55(b), the United States moves the Court for default judgment. Consistent with the United States' Complaint and the proposed order provided herewith, the United States moves for default judgment: (1) declaring that Defendant is committing a continuing trespass on the Subject Property; (2) ejecting Defendant and his personal property from the Subject Property; (3) ordering Defendant to pay $54,559 in principal trespass damages, $5,834 in prejudgment interest, and postjudgment interest compounded annually; and (4) allowing the United States to seek restoration damages, if necessary, after CRIT takes possession of the Subject Property.[2]

---

[1] Defendant unlawfully occupies Lot 17 of the McCoy Subdivision, which is located within Section 11, Township 4 South, Range 23 East, of the San Bernadino Base and Merdian, a short distance from Blythe, in Riverside County, California ("Subject Property"). ECF No. 1 at 3 ¶ 7.

[2] As detailed in the proposed order, the United States Marshals Service will assist with ejectment of Defendant and his personal property from the Subject Property. In addition, until Defendant is ejected from and CRIT takes possession of the Subject Property, the costs of restoring the Subject Property to its natural state

1

## II.   FACTUAL BACKGROUND

CRIT is a federally recognized Indian tribe residing on the Reservation, which Congress established by the Act of March 3, 1865, 13 Stat. 541, 559. ECF No. 1, ¶ 8. The Reservation straddles the Colorado River ("River"), with land in both Arizona and California. *Id.* In 1964, Congress authorized the Secretary of the Interior to approve leases of land on the Reservation. *Id.* at ¶ 9; Pub. L. 88-302, 78 Stat. 188, 189 (Apr. 30, 1964) ("1964 Act").[3]

On September 21, 1979, CRIT leased the Subject Property to Thomas Shea, with approval from the Bureau of Indian Affairs ("BIA"). ECF No. 1, ¶ 18; ECF No. 1-3, Permit No. WB-199 (R) ("Permit"). Defendant accepted assignment of the Permit and its requirements on May 29, 1986. ECF No. 1, ¶ 31; ECF No. 1-5, Assignment of Permit. Both BIA and CRIT approved that assignment to Defendant. *Id.* However, between 1988 and 1993, Defendant repeatedly failed to pay rent for the Subject Property on time or made only partial payments. ECF No. 1, ¶¶ 32–39. By 1996, Defendant owed $3,600 in back rent plus interest. *Id.* at ¶ 40. Thus, on August 9, 1996, BIA notified Defendant that the Permit was "declared forfeited and terminated effective immediately," pursuant to Article 18 of the Permit, for failure to pay full rent for 1995 and 1996. *Id.* at ¶ 40; ECF 1-11, Letter from BIA to Defendant (Aug. 9, 1996); *see* ECF No. 1-3 at 11.

---

cannot be determined. Accordingly, the United States requests an opportunity to seek restoration damages after CRIT takes possession of the Subject Property.

[3] The Reservation was originally located entirely on the eastern (Arizona) side of the River but was subsequently expanded by four Executive Orders. ECF No. 1, ¶ 8. After the 1964 Act, in which Congress held in abeyance the Secretary's leasing authority on California lands until "determined to be within the reservation," the Secretary determined that those lands, including the Subject Property, are within the Reservation. *Id.* at ¶¶ 9–11, 13. Accordingly, in the 1970s, BIA began approving permits to occupy the Reservation on the California side of the River. *Id.* at ¶ 12, 14.

Despite BIA's termination of the Permit, Defendant did not vacate the Subject Property or pay back rent as BIA demanded. ECF No. 1, ¶ 41. Instead, Defendant continued to occupy and use the Subject Property without authorization or permission. *Id.*

Since 1996, CRIT has repeatedly tried to resolve Defendant's trespass without litigation. On July 1, 2010, CRIT posted a notice of trespass on the Subject Property, demanding that the occupant vacate the property. ECF No. 1, ¶ 42. On August 1, 2012, CRIT notified Defendant that, to continue occupying the Subject Property, he would need to enter a new lease and pay the back rent owed (with default interest waived). *Id.* at ¶ 43. Alternatively, CRIT would forgive all back rent and interest owed if Defendant would "walk away" and turn over all improvements on the Subject Property to CRIT. *Id.* On April 9, 2013, CRIT again offered solutions to resolve Defendant's trespass. *Id.* at ¶ 45. Yet Defendant did not enter a new lease or walk away but continued to occupy and use the Subject Property. *Id.* at ¶ 44. Defendant continues to occupy and use the Subject Property today. *Id.* at ¶¶ 2, 7, 47–48, 59, 62–64.

### III.    PROCEDURAL BACKGROUND

The United States filed the Complaint against Defendant on November 6, 2023. ECF No. 1. The Clerk of the Court issued the Summons in a Civil Action on November 7, 2023. ECF No. 9. On December 11, 2023, Richard Dewalt of ABC Legal Services, LLC personally served the Summons, Complaint, and other necessary documents on Defendant at his place of business in Garden Grove, California, pursuant to Fed. R. Civ. P. 4. *See* ECF No. 11.

Defendant's response to the Complaint was due on January 2, 2024. ECF Nos. 11, 12. Defendant failed to answer or otherwise respond. Accordingly, on January 24, 2024, the United States requested that the Clerk enter default against

Defendant pursuant to Fed. R. Civ. P. 55(a). ECF No. 13. The Clerk entered default on January 25, 2024. ECF No. 14.

On January 31, 2024, the Court issued an *Order to Show Cause Re Default Judgment* ("Order to Show Cause"), setting a hearing on the Order to Show Cause for March 4, 2024. ECF No. 15. However, at the United States' request, the Court continued that hearing until April 29, 2024, to allow additional time to file this *Motion for Default Judgment* ("Motion"). *See* ECF Nos. 16 (*Response to Order to Show Cause and Request for Continuance of Hearing*), 17 (*Scheduling Notice and Order*). Pursuant to Fed. R. Civ. P. 5 and L.R. 5-3.2.1, the United States properly served on Defendant its *Request for Entry of Default* on January 24, 2024 (ECF No. 13 at 4), and its *Response to Order to Show Cause and Request for Continuance of Hearing* on February 7, 2024 (ECF No. 16 at 5). The United States served both filings at the address at which Defendant was personally served the Summons and Complaint. *See* ECF No. 11. This Motion was also properly served on Defendant at that same address. *See infra*, Certificate of Service.

Lastly, with this Motion, counsel for the United States submits a declaration establishing that the United States has met all procedural requirements of Fed. R. Civ. P. 55 and L.R. 55-1. *See* Ex. 1, Decl. of Cody McBride.

## IV.  ARGUMENT

Default judgment against Defendant is warranted in this case. Fed. R. Civ. P. 55(b) permits plaintiffs to seek default judgment against defendants who "fail[] to plead or otherwise defend" against well-pleaded allegations. Fed. R. Civ. P. 55(b); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). The Complaint and its supporting exhibits document Defendant's intentional and ongoing multi-decade trespass on the Subject Property, allegations that Defendant has not appeared in this case to refute.

The Court should exercise its discretion to enter default judgment against Defendant. Defendant was properly served with the Complaint and other documents, and this Court has the requisite jurisdiction to grant default judgment against him. *See* Section IV.A. In addition, the factors that courts in the Ninth Circuit consider when granting default judgment clearly weigh in favor of doing so in this case. *See* Section IV.B. Lastly, the remedies sought by the United States are proper for default judgment. *See* Section IV.C. The Court should therefore grant the Motion.

### A.   Defendant was Properly Served, and the Court Possesses the Requisite Jurisdiction to Grant the Motion.

When considering whether to grant default judgment, the reviewing court must first confirm that service was proper and that it has the requisite jurisdiction to grant such relief. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851–54 (9th Cir. 1992). Here, these threshold requirements are met.

On December 11, 2023, the United States had Defendant personally served with the Complaint, Summons, and other documents. ECF No. 11. Subsequently, the United States served on Defendant its *Request for Entry of Default* (ECF No. 13 at 4), *Request for Continuance of Hearing* (ECF No. 16 at 5), and this Motion (Certificate of Service, *infra*). Service was done consistent with the Federal Rules of Civil Procedure and this Court's Local Rules, which confirms that service was adequate for default judgment. *See, e.g.*, *Craneveyor Corp. v. AMK Express Inc.*, No. 16-CV-6049, 2017 WL 89553, *3 (C.D. Cal. Jan. 10, 2017); *GS Holistic, LLC v. Ravens Smoke Shop, Inc.*, No. 22-CV-7199, 2023 WL 9319242, *2 (C.D. Cal. Dec. 1, 2023) (requiring as a matter of discretion that motion for default judgment be served through method "at least reasonably likely to provide notice of the motion to the Defendant(s)").

Additionally, the Court has the requisite jurisdiction to grant default judgment against Defendant. The Court undoubtedly maintains subject matter jurisdiction over this case, as it has been brought by the United States, *see* 28 U.S.C. § 1345, and it implicates the Court's federal question jurisdiction, *see* 28 U.S.C. § 1331. *See United States v. Milner*, 583 F.3d 1174, 1182–83 (9th Cir. 2009) ("Federal common law governs an action for trespass on Indian lands."). Moreover, the Court can properly assert personal jurisdiction over Defendant. Defendant not only resides within the jurisdictional boundary of the Central District of California, the Complaint and its supporting exhibits document his historic and ongoing trespass on the Subject Property, also located within this District. Thus, there is no reasonable dispute as to whether the Court has jurisdiction to grant default judgment against Defendant.

**B.    The United States is Entitled to Default Judgment in this Case.**

Default judgment may be entered against a defendant who fails to respond to a complaint within the time required. *See* Fed. R. Civ. P. 55. Default judgment is a two-step process. The Clerk of the Court must enter default. Fed. R. Civ. P. 55(a). And after entry of default, the moving party must request default judgment from the Court. Fed. R. Civ. P. 55(b).

Having received the Clerk's entry of default under Fed. R. Civ. P. 55(a), the United States now moves for default judgment under Fed. R. Civ. P. 55(b). In deciding whether default judgment is warranted under Rule 55(b), courts in the Ninth Circuit weigh the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
> the sum of money at stake in the action, (5) the possibility of a dispute
> concerning material facts, (6) whether the default was due to

excusable neglect, and (7) the strong policy underlying the Federal

Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Except for the policy favoring a decision on the merits, which is not dispositive, each of the *Eitel* factors weigh in favor of granting default judgment here.

> 1. *Plaintiff will be prejudiced if default judgment is not entered.*

Where a defendant's failure to participate leaves plaintiff "without other recourse for recovery," the plaintiff will be prejudiced unless default judgment is granted. *Elektra Ent. Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005); *see also PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Here, because Defendant has refused to participate, failure to enter default judgment will prejudice the United States by denying its right to judicial resolution without other recourse for recovery. For decades, Defendant has resisted CRIT's and BIA's attempts to remedy his trespass. Defendant's continuing, willful trespass on the Subject Property can only be remedied through Defendant's ejectment and his payment of damages. The first *Eitel* factor therefore weighs in favor of default judgment. *See, e.g.*, *GS Holistic, LLC*, 2023 WL 9319242, *3.

> 2. *Plaintiff's claims have merit, and the Complaint is sufficient.*

Under the second and third *Eitel* factors, a plaintiff's claims have merit, and the Complaint is sufficient, if the plaintiff adequately pleaded a claim for relief on which it may recover. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175–76 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). A complaint satisfies this standard and is "well-pleaded" when the claims "cross the line from the conceivable to plausible." *See Waters v. Mitchell*, 600 F. Supp. 3d 1177, 1183 (W.D. Wash. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)). Here, the United States

adequately pleaded claims of trespass and ejectment against Defendant, which entitles the United States to the relief it requests in the Complaint.

"Federal common law governs an action for trespass on Indian lands." *Milner*, 583 F.3d at 1182. Federal common-law trespass is "the intentional use of property of another without authorization and without privilege," and the only intent required is intent to be on the land. *United States v. Imperial Irr. Dist.*, 799 F. Supp. 1052, 1059 (S.D. Cal. 1992); *see Milner*, 583 F.3d at 1182. The remedies for trespass on Indian lands include declaratory relief, ejectment, and damages. *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1549 n.8 (9th Cir. 1994). In addition to being a remedy for trespass, ejectment is a separate cause of action under federal common law that can protect Indian lands from trespass. *Pend Oreille*, 28 F.3d at 1549 n.8; *Marsh v. Brooks*, 49 U.S. 223, 232 (1850) ("That an action of ejectment could be maintained on an Indian right to occupancy and use, is not open to question."); 25 AM. JUR. 2d *Ejectment* § 1 (2024) ("Ejectment is an action at law . . . filed by a plaintiff who does not possess the land but has the right to possess it against a defendant who has actual possession."); *see also United States v. Osterlund*, 671 F.2d 1267, 1268 (10th Cir. 1982) (ordering trespasser to remove all structures, improvements, and personal property because, "[o]nce it was established that [defendant] was a trespasser on national forest land, the government had the right to enjoin his continued occupancy and use of the land").[4]

As pleaded in the Complaint, on August 9, 1996, BIA terminated the Permit that authorized Defendant to occupy and use the Subject Property. ECF No. 1, ¶ 40. Since then, Defendant has not had a valid lease or permit for the Subject

---

[4] BIA regulations governing the Subject Property are consistent with these federal common law principles. *See* ECF No. 1, ¶¶ 51–54 (citing 25 C.F.R. §§ 162.003, 162.005, 162.371).

Property. *Id.* at ¶ 55. And Defendant does not have an ownership interest in the Subject Property. *Id.* at ¶¶ 1, 55. Both BIA and CRIT have repeatedly notified Defendant that he is in trespass and ordered that he vacate the Subject Property or enter a new lease, but Defendant has refused. *Id.* at ¶¶ 42–46, 57, 61. Instead, Defendant continues to occupy and use the Subject Property, depriving the United States and CRIT of their right to do so. *Id.* at ¶¶ 2, 47–48.

Under federal common law, the United States' allegations setting out Defendant's willful, unauthorized, and continuing occupancy and use of the Subject Property constitute well-pleaded claims of trespass and ejectment for which the United States may recover. *Id.* at ¶¶ 55, 57–59, 61–64. Thus, the second and third *Eitel* factors weigh in favor of default judgment.

### 3. *Damages sought are reasonable in relation to Defendant's conduct.*

Under the fourth *Eitel* factor, the Court must consider whether the sum of money at stake is reasonable in relation to the seriousness of defendant's conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176–77; *see also Bd. of Trs. v. Core Concrete Const., Inc.*, No. 11-CV-2532, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) ("[W]here the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate").

Here, the amount of damages sought is reasonable in relation to Defendant's conduct. At this time, the United States seeks $54,559 in principal trespass damages, $5,834 in prejudgment interest, and postjudgment interest compounded annually. Attached to this Motion, the United States provides a declaration from an expert who calculates the amount of principal trespass damages and prejudgment interest using the applicable standards under federal law. Ex. 2, Decl. of Walter Carney ("Carney Decl."). Accordingly, the amount requested in this Motion is

1  reasonable in relation to Defendant's conduct, and the fourth *Eitel* factor supports
2  default judgment.

3        a.  <u>Principal trespass damages</u>

4        Trespass damages include all injuries proximately flowing from the trespass.
5  *Hammond v. Cty. of Madera*, 859 F.2d 797, 804 (9th Cir. 1988), *rev'd on other*
6  *grounds*, *Wood v. Ostrander*, 851 F.2d 1212 (9th Cir. 1988)). Principally, the
7  trespasser is liable for the fair market rental value of the property, assuming the
8  property's highest and best use. *Id.*; *Imperial Irr. Dist.*, 799 F. Supp. at 1066; *see*
9  *also* 25 C.F.R. 162.003 (defining "fair market rental" as "the amount of rental
10  income that a leased tract of Indian land would most probably command in an open
11  and competitive market, or as determined by competitive bidding"). For a
12  continuing trespass claim commenced by the United States on behalf of an Indian
13  tribe, damages may date back 6 years and 90 days from the date of filing the
14  complaint. 28 U.S.C. § 2415(b).

15        Based on Defendant's continuing trespass over the 6 years and 90 days prior
16  to the Complaint, the United States seeks principal damages in the amount of
17  $54,559. To calculate the fair market rental value of the Subject Property, the
18  United States engaged an expert appraiser, Walter Carney. *See* Ex. 2, Carney Decl.
19  Mr. Carney determined that the Subject Property's highest and best use is as a
20  residential lot. *Id.* at ¶ 4. And based on the Subject Property's highest and best use,
21  Mr. Carney used a "comparative analysis" to calculate the fair market rental value
22  of the Subject Property for the 6 years and 90 days prior to the Complaint, *i.e.*,
23  from August 10, 2017, to November 6, 2023. *Id.* at ¶ 5. Under the comparative
24  analysis, an appraiser considers rents of comparable properties in the competitive
25  market area. *Id.* Mr. Carney considered rents charged by CRIT to lease comparable
26  riverfront properties on the Reservation during the time at issue. *Id.*

27
28

The amount of principal trespass damages calculated by Mr. Carney is reasonable in relation to Defendant's conduct because that conduct deprived CRIT of the fair market rental value of the Subject Property. Had Defendant vacated the Subject Property when ordered to, CRIT could have leased it at the rate charged for riverfront properties, which is equivalent to the fair market rental value calculated by Mr. Carney. Thus, principal trespass damages in the amount of $54,559 fairly and reasonably compensates the United States, on behalf of CRIT, for Defendant's trespass over the 6 years and 90 days prior to the Complaint.

b.   Prejudgment interest

The Court should also award the United States prejudgment interest. In federal courts, prejudgment interest is widely recognized "as a means to make the plaintiff whole against a dilatory defendant" and compensate a plaintiff for the "time value" of money. *Pend Orielle*, 135 F.3d at 613. Not awarding prejudgment interest would effectively grant defendants "an interest free loan" and "encourage delay in payment" of judgments. *See Monsanto Co. v. Hodel*, 827 F.2d 483, 485 (9th Cir. 1987). This remedy "is intended to cover the lost investment potential of funds . . . from the time of entitlement to the date of judgment." *Letvinuk v. Aetna Life Ins. Co.*, No. 06-CV-2831, 2011 WL 6056878, at *3 (C.D. Cal. Dec. 2, 2011).

Here, prejudgment interest should be awarded to compensate the United States, on behalf of CRIT, for the time value of money lost from the inability to collect rent on the Subject Property over the 6 years and 90 days prior to the Complaint. That money could have been used for government services, economic development, and investment in the community. Due to Defendant's trespass, CRIT has been deprived of multiple years of revenue, development, and investment opportunity. Thus, awarding prejudgment interest is reasonable in relation to Defendant's conduct.

Pursuant to 28 U.S.C. § 1961(a),[5] prejudgment interest is calculated as the "weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *See In re Nucorp Energy, Inc.*, 902 F.2d 729, 734 (9th Cir. 1990). And under § 1961(b), *compound* prejudgment interest is standard. *See Termine v. William S. Hart Union High School Dist.*, 288 F. App'x 360, 363 (9th Cir. 2008); *Pend Oreille*, 135 F.3d at 613 (awarding compound prejudgment interest at 90 percent of prime rate). Based on the formula provided by § 1961(a), Mr. Carney calculated that $5,834 in compounded prejudgment interest accrued between August 10, 2017, and April 12, 2024. Carney Decl. at 6. Accordingly, the Court should award the United States, on behalf of CRIT, $5,834 in prejudgment interest.[6]

c.   Postjudgment interest

Postjudgment interest is mandatory. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995). Like prejudgment interest, the application of postjudgment interest compensates a party for the time value of unpaid damages. *Northrop Corp. v. Triad Intern. Marketing*, 842 F.2d 1154, 1156 (9th Cir. 1988). In addition, the accrual of postjudgment interest ensures that a

---

[5] Alternatively, the Court has discretion to award prejudgment interest at a different rate in consideration of the equities of a particular case. *In re Nucorp Energy, Inc.*, 902 F.2d at 734; *see Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 628 (9th Cir. 2007) (awarding prejudgment interest at a rate of 10 percent compounded annually).

[6] Mr. Carney calculated the amount of prejudgment interest that accrued until April 12, 2024, because that is the date the Federal Reserve most recently published the weekly average 1-year constant maturity Treasury yield. Carney Decl. at 6. Once judgment is entered, the United States requests an opportunity to seek, consistent with § 1961(a), the amount of compounded prejudgment interest that accrues after April 12, 2024, up to the calendar week preceding the date of the judgment.

1   defendant is not incentivized to delay satisfaction of a judgment, requiring the

2   plaintiff to "bear the cost from the loss of the use of money." *Air Separation Inc.*,

3   45 F.3d at 291. Postjudgment interest begins accruing on the entire judgment

4   amount, including prejudgment interest, on the date judgment is entered, *id.* at

5   290–91, and it is to be calculated "daily to the date of payment, [] compounded

6   annually," pursuant to 28 U.S.C. § 1961(b).

7        The United States is entitled to postjudgment interest compounded annually

8   on all damages awarded. Postjudgment interest is particularly necessary here given

9   Defendant's demonstrated disregard for BIA's and CRIT's prior demands for

10  payment of back rent. And postjudgment interest will compensate the United

11  States for the loss of funds it is owed until the judgment is satisfied. Thus,

12  awarding postjudgment interest is reasonable in relation to Defendant's conduct.

13              d.    Restoration damages

14       Lastly, the United States requests an opportunity to seek restoration

15  damages, if necessary, after CRIT takes possession of the Subject Property. In

16  addition to the fair market rental value of the property, the party suing for trespass

17  is "entitled to damages in the form of restitution and abatement costs." *United*

18  *States v. Torlaw Realty, Inc.*, 483 F. Supp. 2d 967, 974 (C.D. Cal. 2007) (providing

19  damages for removing waste and cleaning up the trespass site), *aff'd*, 348 F. App'x

20  213 (9th Cir. 2009). Such damages include the reasonable costs of removing

21  structures and restoring the land to its natural state. *See United States v. Brunskill*,

22  792 F.2d 938, 940 & n.1 (9th Cir. 1986) (ordering trespasser to remove structures

23  and restore the land to its natural state, or allowing the United States to do so and

24  assess costs to defendant); *United States v. McClure*, No. 04-CV-3047, 2006 WL

25  2818354, *5–6 (E.D. Wash. Sept. 26, 2006) (same).

26       Here, restoration damages cannot be calculated with certainty until

27  Defendant is ejected and CRIT takes possession of the Subject Property. As proof

28

of potential restoration damages, the United States provides a declaration from an employee of the CRIT Environmental Protection Office attesting to the potential costs of restoring the Subject Property to its natural state. Exhibit 3, Decl. of Guthrie Dick ("Dick Decl."). Potential costs may include demolishing and removing the structures that Defendant placed on the Subject Property if those structures have been left in a significantly degraded state. *Id.* at ¶ 4. If demolition and removal are necessary, the potential costs of doing so may amount to $115,780.44. *Id.* at ¶ 5. However, until CRIT takes possession of the Subject Property and has access to the inside of the structures, it cannot be determined whether demolition and removal of the structures are necessary, or whether other remediation measures, either in lieu of or in addition to demolition and removal, will be needed. *Id.* at ¶¶ 4, 6. Accordingly, the United States does not request specific restoration damages at this time.

Nevertheless, to preserve the United States' ability to seek restoration damages, the Court should find that, if remediation is necessary, the United States is entitled to the reasonable costs of removing structures and restoring the land to its natural state. Such costs would be reasonable in relation to Defendant's conduct if it is determined that Defendant left the Subject Property in such a degraded state that significant expenses are required to restore it. Because Defendant has refused to participate in this case, CRIT will be left with the task of determining the extent of restoration required and carrying it out. And the United States, on behalf of CRIT, would be entitled to recover the reasonable costs of doing so and reimburse CRIT for such expense. Accordingly, the United States requests that the Court retain jurisdiction so that, if restoration costs are necessary, it may file the appropriate motion, with supporting declarations, seeking a specific amount in restoration damages. *See, e.g.*, *Flynn v. Angelucci Bros & Sons, Inc.*, 448 F. Supp. 2d 193, 197 (D.D.C. 2006) (granting default judgment "without prejudice to the

right of plaintiffs to seek recovery of any" additional damages); *U.A. Local 393 Pension Fund v. Blue Star Plumbing, Inc.*, No. 21-CV-04265, 2022 WL 2288931, *5 (N.D. Cal. Jan. 14, 2022) (retaining jurisdiction after default judgment that granted damages "pending completion of the audit so that the judgment may be amended, if appropriate, to reflect the correct amount due"); *Constr. Laborers Trust Funds for S. Cal. Admin. Co. v. United Constr. & Maint. Inc.*, No. 2:14-CV-03483, 2015 WL 13915733, *8 (C.D. Cal. Apr. 1, 2015) (same).

> ### 4. *The likelihood of a dispute of material fact is minimal.*

The fifth *Eitel* factor examines the likelihood of a dispute between the parties regarding the material facts in the case. When there is an entry of default, a defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV, Inc. v. How Huynh*, 503 F.3d 847, 851 (9th Cir. 2007). That is because, "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wecosign, Inc., v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).

Here, because Defendant has failed to answer or otherwise refute the well-pleaded facts in the Complaint, the likelihood of a dispute of material fact is minimal. Thus, all factual allegations in the Complaint should be taken as true, and this factor weighs in favor of default judgment.

> ### 5. *Defendant's default was not due to excusable neglect.*

Where a defendant was properly served, it is reasonable to assume default was not due to excusable neglect. *See NewGen LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). As explained, the United States properly served Defendant here. First, the United States had the Summons, Complaint, and other necessary documents personally served on Defendant, as required by Fed. R. Civ. P. 4. ECF No. 11. Then, in accordance with Fed. R. Civ. P. 5 and L.R. 5-3.2.1,

the United States served on Defendant its *Request for Entry of Default* (ECF No. 13 at 4) and *Response to Order to Show Cause and Request for Continuance of Hearing* (ECF No. 16 at 5). Yet Defendant has not responded to the Complaint or otherwise appeared, nor has he contacted the United States about this case. And now, the United States has served Defendant with this Motion at least 28 days before the noticed hearing on the Motion. Certificate of Service, *infra*. Accordingly, the Court may reasonably assume that Defendant's default is not due to excusable neglect, and the sixth *Eitel* factor supports default judgment.

6. *Policy favoring a decision on the merits is not dispositive.*

Although policy favors cases being decided on the "merits whenever reasonably possible," "this preference, standing alone, is not dispositive." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Where, as here, a defendant's failure to answer or otherwise respond to the complaint makes a decision on the merits impossible, "default judgment is appropriate." *Wecosign Inc.*, 845 F. Supp. 2d at 1083.

\* \* \*

In sum, consideration of all *Eitel* factors clearly weighs in favor of default judgment in this case.

**C.     The United States' Requested Remedies Are Proper.**

Since default judgment is appropriate, the requested remedies must be considered. Under Fed. R. Civ. P. 54(c), a remedy is proper for default judgment if it does "not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See Craigslist, Inc.v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1051 (N.D. Cal. 2010). "General allegations of damages in a prayer for relief are sufficient to support a default judgment under Rule 54(c), as long as the defendant is given reasonable notice thereby of the potential amount at stake." *Anunciation v. W. Cap. Fin. Servs. Corp.*, 97 F.3d 1458 (9th Cir. 1996) (citing *Henry v. Sneiders*,

490 F.2d 315, 317 (9th Cir. 1974)); *Shapkin/Crossroads Prods., Inc. v. Legacy Home Video, Inc.*, 122 F.3d 1073, 1997 WL 556312, at *2 (9th Cir. 1997) ("So long as a plaintiff requests actual damages in its complaint, it may receive them in a default judgment even though it did not request a specific amount.").

"Unlike factual allegations, allegations relating to the amount of damages are not taken as true upon a default judgment." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citation omitted). Accordingly, when seeking money damages in a default judgment, a plaintiff must "prove up" its damages by "providing admissible evidence in the form of clear declarations, calculations, witness testimony, or other documents supporting its request." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1053–54 (C.D. Cal. 2011) (citations omitted); *TechStock USA, LLC v. RA's Merchandise, LLC*, No. 17-CV-0853, 2017 WL 7156294, at *4 (C.D. Cal. Nov. 13, 2017). Under Fed. R. Civ. P. 55(b)(2), the Court "may rely only on a plaintiff's declarations or order a full evidentiary hearing." *United Specialty Ins. Co. v. E-Cig Vapor Emporium, LLC*, No. 18-CV-0002, 2018 WL 6629246, at *2 (C.D. Cal. Dec. 6, 2018); *Mesa Underwriters Specialty Ins. v. Paradise Skate*, No. 15-CV-01253, 2016 WL 9045622, at *10 (N.D. Cal. Apr. 11, 2016) (If the amount of damages is "capable of mathematical calculation" through evidence, testimony, or written affidavit, a court may enter default judgment without a hearing on damages.).

### 1. *Declaration of trespass and ejectment*

The United States seeks a declaration that Defendant is committing a continuing trespass, and an order ejecting Defendant and his personal property from the Subject Property. These remedies do not differ in kind from or exceed what is demanded in the pleading—each was explicitly demanded in the United States' prayer for relief. ECF No. 1 at 19–20 (requesting declaration of trespass and ejectment of Defendant from Subject Property). Thus, based on the factual

allegations of the Complaint, which are taken as true upon default judgment, the United States' requests for declaratory relief and an order of ejectment are reasonable and should be granted.[7]

        2.   *Damages*

In addition, the United States at this time seeks principal trespass damages, prejudgment interest, and postjudgment interest. As described above, the United States provides declarations supporting and attesting to the calculations of principal trespass damages and prejudgment interest. *See* Ex. 2, Carney Decl. (attesting to calculations of principal trespass damages and prejudgment interest). These well-supported calculations are based on applicable federal law. And postjudgment interest is mandatory and begins accruing after judgment is entered. Accordingly, because the United States has proven the amount of damages by providing admissible evidence, a full evidentiary hearing is not necessary or required for a default judgment granting damages. *See* Default Judgment at 2, *United States v. Thweatt*, No. 5:20-CV-1122 (C.D. Cal. Nov. 18, 2021) (granting default judgment and "all requested damages" against trespasser on the

---

[7] As mentioned above, ejectment is a separate cause of action from trespass. For ejectment of a trespasser on land owned by the United States, only the fact of trespass must be established—an equitable analysis is neither required nor appropriate. *See Osterlund*, 671 F.2d at 1268 ("Once it is established that [defendant] was a trespasser . . . the government had the right to enjoin his continued occupancy and use of that land. The courts have no power to adjust the parties' equities in determining title to federal lands as against the federal government because, as the Supreme Court has stated, the power over the public land thus entrusted to Congress is without limitations." (citations omitted)); *see also Imperial Irr. Dist.*, 799 F. Supp. at 1068 (applying equitable analysis where, unlike here, the United States' complaint requested a preliminary ejectment and did not plead ejectment as a separate cause of action); *see also, e.g.*, *United States v. California*, 332 U.S. 19, 39–40 (1947) (explaining that United States cannot be "barred from enforcing its rights by reasons of principles similar to laches, estoppel or adverse possession").

18

Reservation without evidentiary hearing based on declarations submitted by the United States).

Moreover, Fed. R. Civ. P. 54(c) is satisfied because the United States' prayer for relief gave Defendant "reasonable notice of the potential amount at stake." *See Anunciacion*, 97 F.3d 1458; *see also* ECF No. 1 at 19–20 (requesting fair market rental value of Subject Property for the 6 years and 90 days prior to the Complaint, restoration damages, prejudgment interest, and postjudgment interest, as well as "such other and further relief as the Court deems just and proper"). Thus, the damages sought do "not differ in kind, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

V.    **CONCLUSION**

For the reasons herein, the United States respectfully requests that the Court enter default judgment against Defendant consistent with the proposed order attached herewith.

DATED: April 24, 2024

                                            Respectfully submitted,

                                            TODD KIM
                                            Assistant Attorney General

                                            */s/ Cody McBride*
                                            CODY MCBRIDE
                                            REBECCA M. ROSS
                                            United States Department of Justice
                                            Environment & Natural Resources Division
                                            Indian Resources Section

OF COUNSEL:
Karen F. Boyd
United States Department of the Interior
Office of the Solicitor
Indian Trust Litigation Office

20

**L.R 11-6.1 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the United States, certifies that this brief contains 6,564 words, which:

  X   complies with the word limit of L.R. 11-6.1.

  X   complies with the page limit set by court order.


DATED: April 24, 2024


*/s/ Cody McBride*

CODY MCBRIDE

1

**CERTIFICATE OF SERVICE**

2       I certify that on April 24, 2024, true and correct copies of the Notice of

3   Motion, Motion for Default Judgment, Memorandum of Points and Authorities

4   (with supporting exhibits), and the Proposed Order were sent to Defendant Craig

5   Ferguson via expedited mail to ensure delivery to the following known addresses

6   at least 28 days prior to the June 3, 2024, hearing on this Motion:

7

8       31800 Highway 95
        McCoy Subdivision, Lot #17
9       Blythe, CA 92225

10

11      16902 Baruna Lane
        Huntington Beach, CA 92649
12

13

14      7651 Garden Grove Blvd.
        Garden Grove, CA 92841
15

16      DATED: April 24, 2024

17

18                              */s/ Katherine Shortell*
                                KATHERINE SHORTELL
19

20

21

22

23

24

25

26

27

28
                                        22